United States District Court
Southern District of Texas
**ENTERED**
March 29, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARK SILGUERO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:16-CV-361 |
| | § | |
| CSL PLASMA, INC., | § | |
| | § | |
| Defendant. | § | |

# ORDER

On this day the Court considered Amy Wolfe's ("Wolfe") Motion to Intervene, Dkt. No. 17, in the above-captioned case. The Court has before it Wolfe's Motion to Intervene (Dkt. No. 17), Proposed Complaint (Dkt. No. 17-1), supporting Memorandum (Dkt. No. 18), Defendant's response (Dkt. No. 19), Wolfe's reply (Dkt. No. 20), and the applicable law.

## I. Background

Plaintiff Mark Silguero ("Silguero") filed a complaint on August 24, 2016 against Defendant CSL Plasma, Inc. ("CSL Plasma"). CSL Plasma operates a plasma collection center and accepts donations of plasma from eligible human donors who satisfy federal statutes, regulations, and guidance established by the U.S. Department of Health and Human Services, the Food and Drug Administration, international regulations, and CSL medical directors' donor eligibility criteria. *See* Answer at ¶ 9. Silguero claims that CSL Plasma discriminated against Silguero by preventing him from selling or donating blood plasma solely because he has an orthopedic impairment and uses a cane. Silguero alleges that this "disability discrimination was not based on Plaintiff's failure to meet any legitimate requirement for donating blood plasma or any risk factor that would provide a legitimate reason for rejecting him." Compl. at ¶ 1. Silguero argues that CSL Plasma has, therefore, "violate[d] both federal and state law." *Id*. Silguero

seeks injunctive relief under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq.*, and under Texas state law (specifically under Chapter 121 of the Texas Human Resources Code). *Id.* at ¶¶ 1, 17–23, 24–28. Siguero also seeks damages under Texas state law. *Id.* at ¶¶ 29–30.

Wolfe seeks to intervene as a party plaintiff in the above-captioned action. She alleges that CSL Plasma discriminated against her by preventing her from selling or donating blood plasma "solely because her various disabilities—including Posttraumatic Stress Disorder (PTSD), Generalized Anxiety Disorder (GAD), and Panic Disorder—require the use of a service animal." Dkt. No. 17-1 at 1. She alleges that this "discrimination was not based on [her] failure to meet any legitimate requirement for donating blood plasma, nor on any risk factor that would provide a legitimate reason for rejecting her." *Id.* She argues that CSL Plasma's actions violate both federal and Texas state law. She seeks relief under Title III of the ADA, U.S.C. §§ 12181, *et seq.*, and under Texas state law. *Id.* at ¶¶ 1; 16–21; 22–26. Wolfe also seeks damages under Texas state law. *Id.* at ¶¶ 27–28.

CSL Plasma argues that Wolfe's motion is not timely and that Wolfe's case contains few common questions of fact or law, and therefore, Wolfe's Motion to Intervene should be denied. *See* Dkt. No. 19.

## II. Legal Rule

Federal Rule of Civil Procedure 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Fifth Circuit in *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977), articulated four factors that a court should consider when evaluating timeliness for permissive intervention: (1) the length of time during which the would-be

intervenor actually know or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Id.* at 264–66. In its opinion, the Fifth Circuit also specifically held that "[t]imeliness" within the meaning of Rule 24 is "not a word of exactitude or of precisely measureable dimensions." *Id.* at 263. The Fifth Circuit noted that "[i]n addition to listing the factors that should be considered, it is important to mention some that should be ignored." *Id.* at 266. Those include "absolute" measures of timeliness, such as the "amount of time that may have elapsed since the institution of the action." *Id.* (citing 3B J. Moore, H. Fink, & J. Kennedy, *Moore's Federal Practice* P 24.13(1), at 523 (2d ed. 1977)). The Fifth Circuit explained that since the type of prejudice that is relevant to the determination of timeliness is already incorporated under Factor 2, consideration of "absolute" measures of timeliness separately would make Factor 2 redundant. *Id.* In sum, Rule 24's timeliness provision is "relative, not absolute." *Id.*

The Fifth Circuit has also cautioned that although the *Stallworth* factors "give structure to our timeliness analysis, we have explicitly observed that the timeliness analysis remains 'contextual,' and should not be used as a 'tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties by the failure to apply sooner.' " *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (alteration in original) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

If the Motion to Intervene is deemed timely, the decision whether to allow permissive intervention lies within the discretion of the trial court. The court may

deny permissive intervention even if the criteria of Rule 24(b) are met. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) ("Permissive intervention 'is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.' ") (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 1913 at 551) (internal alterations omitted). "In acting on a request for permissive intervention, it is proper to consider, among other things, whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *Id.* (citing *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *United States Postal Service v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978)) (internal quotations omitted). "Other factors include the nature and extent of intervenors' interest and their standing to raise relevant legal issues." *Id.* at 472 n.40 (citing *Spangler*, 552 F.2d at 1329; *Brennan*, 579 F.2d at 192).

## III. Analysis

CSL Plasma argues that Wolfe's intervention is untimely because Wolfe, represented by the same counsel as Silguero, waited until the Court's deadline for joinder to move to intervene. Dkt. No. 19 at 4–5. CSL Plasma argues that Wolfe has known of her possible intervention since October 2016, Wolfe's motion comes halfway through the discovery period,[1] Wolfe will not be prejudiced by bringing a separate claim, and Wolfe lacks unusual circumstances.

Wolfe acknowledges in her reply brief that "she filed her motion five months after her injury and just over six months after this lawsuit was filed." Dkt. No. 20 at 4. Wolfe argues that the existence of unusual circumstances is the reason for this delay. Wolfe is represented by Disability Rights Texas ("DRTX"), which generally

---

[1] The Court issued a Scheduling Order in the above-captioned case on December 7, 2016. That Scheduling Order stated that the deadline to join new parties was March 15, 2017. That Scheduling Order also provides that the discovery deadline is July 14, 2017. *See* Dkt. No. 12.

does not charge a retainer, and seeks to establish pro bono relationships with larger firms in Texas to accommodate the number of people contacting it for legal assistance. Dkt. No. 20 at 5. According to Wolfe's reply brief, DRTX first learned of Wolfe's claim on October 31, 2016. On November 3, 2016, DRTX began searching for a pro bono attorney. The first firm that DRTX contacted had a conflict. A second pro bono firm originally cleared conflicts on November 22, but on November 28, determined that there was a conflict. *Id.* at 6. On November 28, DRTX reached out to a third firm, Fish & Richardson, which agreed to check for conflicts. In January 2017, Wolfe signed a representation agreement with Fish & Richardson. During the first two weeks in February DRTX reminded counsel of Fish & Richardson that DRTX was awaiting their input on the Motion to Intervene. On February 21, 2017, the lawyers at Fish & Richardson indicated to DRTX that because of major staffing changes, they could no longer participate in the pro bono representation of Wolfe. *Id.* at 6–7. DRTX finalized and filed the Motion to Intervene on March 3, 2017. *Id.* at 7.

  Given these facts, the Court finds that the reason for the five-month time period between when Wolfe actually knew or reasonably should have known of her interest in litigation (*Stallworth* Factor 1) is in part due to the existence of unusual circumstances (*Stallworth* Factor 4) in her case. As to the extent of the prejudice that the existing parties to the litigation may suffer as a result of Wolfe's failure to apply for intervention as soon as she reasonably should have known of her interest in the case (*Stallworth* Factor 2), the Scheduling Order still leaves three and a half months for discovery. *See* Dkt. No. 12 (providing that discovery deadline is July 14, 2017). Wolfe's reply notes that parties have only exchanged and answered a single set of written discovery. Dkt. No. 20. As far as depositions, parties have scheduled the depositions of Silguero and his wife in April, *id.* at 2, which appears to leave enough time to conduct discovery related to Wolfe's claim in the following months. Additionally, neither the joinder deadline nor the discovery deadline has passed, and thus CSL Plasma will not have to, for example, re-open discovery. Furthermore, the Court has not yet held any significant proceedings in this case. Finally, as to the

extent of the prejudice that Wolfe may suffer if her petition for leave to intervene is denied (*Stallworth* Factor 3), the multiple failed attempts of DRTX to obtain pro bono counsel indicates that Wolfe may face difficulty in filing suit if her petition for leave to intervene is denied. Given this contextual inquiry as to the events surrounding Wolfe's Motion to Intervene, *see Ross*, 426 F.3d at 754, the Court finds Wolfe's Motion to Intervene is timely.

Wolfe's claim also poses a common question of law with Silguero's action regarding whether the ADA and Texas state law provide a cause of action for individuals denied from donating plasma. Both raise questions of law about general defenses, such as whether CSL Plasma's plasma-donation centers are places of public accommodation.[2] While CSL Plasma argues that Silguero and Wolfe visited different centers and, therefore, the fact issues will be different, the Rule 24(b) standard only requires a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). Accepting CSL Plasma's contention that the interactions were based on different facts does not change the similarities in the legal questions at stake in this case.

Additionally, Wolfe's interests are not fully represented by Silguero because Silguero alleges that he was discriminated against because he has an orthopedic impairment and uses a cane. Wolfe, in contrast, alleges that she was discriminated against because her disabilities require the use of a service animal. Wolfe's interests may "significantly contribute to the full development of the underlying factual issues in the suit." *See New Orleans Pub. Serv., Inc.,* 732 F.2d at 470–71. The allegations in Wolfe's Motion to Intervene also indicate that she likely has an interest and standing to raise relevant legal issues. *See id.* at 472 n.40.

## IV.   Conclusion

The Court hereby exercises its discretion pursuant to Rule 24(b)(2) to **GRANT** Wolfe's Motion to Intervene, Dkt. No. 17. It is therefore **ORDERED** that

---

[2] CSL Plasma concedes that some commonality exists in questions of law regarding CSL Plasma's general defenses. Dkt. No. 19 at 8.

the proposed Complaint in Intervention, Dkt. No. 17-1, be considered filed on the date of filing of the Motion to Intervene.

    SIGNED this 28th day of March, 2017.

                                                  Hilda Tagle
                                                  Senior United States District Judge