IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARK SILGUERO, | § |
| Plaintiff, | § |
| v. | § |
| AMY WOLFE, | § CIVIL ACTION NO. 2:16-CV-361 |
| Intervenor Plaintiff, | § |
| v. | § |
| CSL PLASMA INC., | § |
| Defendant. | § |

## DEFENDANT'S BRIEF REGARDING JURISDICTION

Defendant CSL Plasma Inc. ("CSL") files this Brief Regarding Jurisdiction under the Court's Order of December 4, 2019 (Doc. 61), and would show that the Court should retain jurisdiction, exercising its discretion under 28 U.S.C. §1367 following the disposition of the federal claim, and under original diversity jurisdiction under 28 U.S.C. §1332(a). Retention of the case after it has been fully litigated in this Court and ruled on in a summary judgment motion would conserve judicial and party resources and is in line with Circuit precedent.

### I. Factual and Procedural History

Plaintiff Mark Silguero filed his complaint in this Court on August 24, 2016. He asserted causes of action under Title III of the Americans with Disabilities Act (ADA) and a state law claim under the Texas Human Resources Code (THRC) alleging that CSL discriminated against him on the basis of disability when it did not allow him to sell his plasma at its facility. Doc. 1. Intervenor

Plaintiff Amy Wolfe joined this case as an intervenor with identical causes of action on March 28, 2017. Docs. 17, 21.

In their Complaints, both Plaintiffs invoked the Court's federal question jurisdiction under 28 U.S.C. §§1331 and 2201 as to their federal claims and supplemental jurisdiction under 28 U.S.C. §1367(a) as to their state claims. Doc. 1 at ¶ 2; Doc. 17-1 at ¶ 2. Neither Plaintiff specifically alleged diversity jurisdiction even though, as Plaintiffs point out, Plaintiffs are Texas residents and CSL is a Delaware corporation. Doc. 1 at ¶¶ 4-5; Doc. 17-1 at ¶¶ 4-5.[1]

On November 2, 2017, the Court granted CSL's Motion for Summary Judgment (Doc. 49) and entered a Final Judgment (Doc. 50) disposing all claims. Plaintiffs appealed the Court's ruling to the Fifth Circuit. Doc. 53. The Fifth Circuit affirmed this Court's grant of summary judgment to CSL on the ADA Title III claim, but certified two questions to the Supreme Court of Texas on the THRC claim. On December 4, 2019, after receiving a decision from the Texas Supreme Court on the certified questions, the Fifth Circuit issued a *per curiam* opinion upholding summary judgment as to Plaintiffs' federal law claims but reversing as to the state law claims, based on the newly-clarified legal test articulated by the Texas Supreme Court. On remand, the Fifth Circuit directed this Court to consider whether it should exercise its discretion to decide the remaining state law claims or dismiss the case without prejudice. The Court of Appeals did not take a position and left the decision to this Court. The matter is now before this Court for decision on the threshold issue of retention of jurisdiction over the THRC claims.

---

[1] Although these allegations are insufficient, as phrased, to establish subject matter jurisdiction under 28 U.S.C. §1332, there is no dispute that Plaintiffs are individuals who are citizens of the State of Texas. Defendant is a Delaware corporation and has its principal place of business in King of Prussia, Pennsylvania. See Declaration of Bruce J. Douglas filed herewith. These jurisdictional facts existed at the time this action was commenced. There was, and is, complete diversity of citizenship among the parties. The amount in controversy, measured at the time of commencement of suit, exceeded the sum of $75,000, exclusive of interest and costs, as explained, *infra.*

2

## II.     Legal Analysis

First, this Court has original jurisdiction based on diversity of citizenship under 28 U.S.C. §1332, even though Plaintiffs did not allege it in plain terms in their complaints as a basis of jurisdiction. Merely because a party fails to properly allege a basis of jurisdiction does not preclude this Court from examining its jurisdiction any more than an improperly pled basis of federal jurisdiction does not prevent a federal court from determining there is a lack of subject matter jurisdiction at any time.

Second, assuming the only basis for the Court's jurisdiction over the state law claim is 28 U.S.C. §1367, the Court is in the best position to decide the state law question because it has already thoroughly considered it in the parties' cross-motions for summary judgment (Docs. 34, 36). With the benefit of the Texas Supreme Court's clarification of the legal standards under the THRC, this Court is as well-equipped as any Texas state court to decide the issue. A dismissal of the action would require Plaintiffs to begin anew in a state court and would consume unnecessary judicial resources and cause additional, avoidable expenses for the parties.

### A.   The Court has Diversity Jurisdiction over Plaintiffs' Claims.

#### 1.   Citizenship of All Parties is Completely Diverse.

Federal district courts have original jurisdiction of civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. §1332(a)(1). In determining whether a plaintiff's alleged facts show a good-faith claim for an amount in controversy exceeding $75,000, the court looks to plaintiff's claimed, legally-recoverable damages, including attorneys' fees[2] and the value of the

---

[2] *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 873-74 (5th Cir. 2002).

object of the litigation when injunctive relief is sought[3] based on a facial examination of the pleadings. Conversely, once a facially-sufficient amount-in-controversy claim has been established, it can only be defeated if, based on the pleadings and submission of proof, it is shown to a "legal certainty" that the plaintiff cannot recover more than $75,000.[4] Importantly for this case, the jurisdictional inquiry is based on the pleadings *at the time of filing*.[5] Once diversity is established, it cannot be destroyed by a party's later change of domicile or by a later event that reduces the recoverable damages to below the minimum amount in controversy.[6]

In paragraphs four (4) and five (5) of Plaintiffs' Complaints (Docs. 1 & 17-1), respectively, Plaintiffs allege they are Texas residents and CSL is a Delaware-based corporation. Although one cannot read Plaintiffs' or their counsels' minds, it appears that they intended to convey that they were (and are) citizens of the State of Texas and that CSL is a citizen of Delaware and Pennsylvania. On the record before this Court, Plaintiffs are citizens of Texas and CSL is a citizen of Delaware and Pennsylvania for diversity jurisdiction purposes.[7] A court may examine its subject matter jurisdiction at any time for a lack of jurisdiction. There is no reason this Court cannot examine its jurisdiction anew at this stage of the proceedings, long after the case has been

---

[3] *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013).

[4] *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

[5] *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 570-71 (2004).

[6] *Newman-Green, Inc, v. Alfonzo-Larrain*, 490 U.S. 826, 839 (1989); *see also, Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957); *Saint Paul Mercury Indem.*, 303 U.S. at 289-90.

[7] An allegation of residency has significance in a pleading, and it is relevant to the question of venue under 28 U.S.C. §1391. There is no doubt, based on the record evidence, that the events that gave rise to this action occurred within the Southern District of Texas. And, Defendant CSL Plasma Inc. admitted in its Answer that venue was proper in this judicial district. *See* Docs. 8, ¶ 5; 31, ¶ 5.

adjudicated and has been ruled on by the Court of Appeals, to find it had original jurisdiction from the outset.

In a situation very similar to the one at bar, the court in *Mapp v. UMG Recordings, Inc.* exercised diversity jurisdiction over the plaintiff's state claims despite his failure to plead diversity jurisdiction in his initial complaint.[8] At first, the court declined to exercise supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. §1367 and dismissed them. Although the plaintiff did not invoke diversity jurisdiction, he alleged in his complaint that he is a citizen of Louisiana and that the defendant is a Delaware corporation. Following myriad procedural events (including an abandoned attempt to amend the complaint to add diversity jurisdiction), the district court granted the plaintiff's Rule 59(e) motion to alter judgment and reversed its ruling based on an *inference of diversity jurisdiction*.[9] To support its ruling, the court cited 28 U.S.C. §1653 and Fifth Circuit precedent observing that "[a]lthough [p]laintiff did not utter the magic words 'diversity jurisdiction' or 'Section 1332,' the [c]ourt finds this is not fatal to [p]laintiff's case." The plaintiff pled facts that allowed the court to "infer that diversity jurisdiction has existed since the inception of the case" by alleging the diversity of the parties and "factual

---

[8] *Mapp v. UMG Recordings, Inc.*, No. 15-602-JWD-FLP, 2017 U.S. Dist. LEXIS 189956 at *19 (M.D. La. May 3, 2017).

[9] *Id*. at 6, 14-15.

allegations that create a reasonable inference that the amount in controversy exceeds $75,000."[10] Appellate and district courts in at least four other circuits have reached similar conclusions.[11]

This Circuit's precedent is in accord with this approach as well. In *Kaufman v. Western Union Telegraph Co.*, 224 F.2d 723, 725 (5th Cir. 1955), the Fifth Circuit considered whether it had diversity jurisdiction even though the complaint did not affirmatively allege it. There, the plaintiff pled that he was a resident of Texas, which the court equated with citizenship, and that the defendant was a corporation organized "under law" with an office in Texas. The court opined that, for jurisdiction to be founded on diversity of citizenship, "it must affirmatively appear from the complaint that the plaintiff is a citizen of one state and the defendant a citizen of another." *Id.* Further, "if jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded, the formal defect in the pleadings did not deprive the [c]ourt of jurisdiction at the time when the action was filed, if such defect [is] later corrected." *Id.* The court then undertook its own research via the Encyclopedia Britannica to determine that Western Union

---

[10] *Id.* at *14-15. *See also, Capital Guidance Assocs. IV v. NCNB Tex. Nat'l Bank*, No. H-90-331, 1991 U.S. Dist. LEXIS 21085 at *13 (S.D. Tex. Oct. 7, 1991) ("[I]f the allegation of jurisdiction is insufficient or entirely lacking but there are facts pleaded in the complaint" then "jurisdiction may be inferred...") (quoting *Tarleton v. Meharry Medical College*, 717 F.2d 1523, 1529 (6th Cir. 1983).

[11] *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 397 (6th Cir. 2016) ("In determining whether there is a proper basis for the exercise of jurisdiction, we read the complaint holistically.") (citing *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 5 (1st Cir. 1999); *J&J Sports Prods., Inc. v. Rose's Dream, Inc.*, 818 F. Supp. 2d 1, 3 (D.D.C. 2010) (explaining that defendant's argument that the complaint should be amended to include proper jurisdictional allegations was "overly technical" where the basis for jurisdiction was "clear from the face of the complaint."); quoting *Harary v. Blumenthal*, 555 F.2d 1113, 1115 n. 1 (2nd Cir. 1977) ("When the complaint pleads facts from which federal jurisdiction may be inferred… the insufficiency of the jurisdictional allegation is not controlling, and the action need not be dismissed.")).

was a New York corporation and that it should proceed with the case on its merits pending its order to the plaintiff to amend the complaint to properly allege diversity jurisdiction.[12]

While Plaintiffs here did not specifically plead diversity jurisdiction or use any "magic words," jurisdiction can be inferred based on the allegations in the Complaints. Plaintiffs' allegations regarding *residency* and the record evidence demonstrate they are, in fact, *citizens* of Texas.[13] As for CSL, the Court need not undertake independent research on its citizenship as the court did in *Kaufman*. Pursuant to the attached Declaration of Bruce J. Douglas, CSL is, and was at all times material to this issue, a corporation organized under the laws of Delaware with its principal place of business in Pennsylvania. Thus, there can be no doubt there is complete diversity between the parties.

### 2. The Amount in Controversy at the Time the Action was Commenced Exceeded the Sum of $75,000, Exclusive of Interest and Costs.

The factual allegations of disability discrimination and commensurate claims for actual and punitive damages, injunctive relief, and attorneys' fees show the amount in controversy exceeds $75,000, exclusive of interest and costs. The inquiry is based on the total amount of monetary relief, including attorneys' fees, measured at the time the action was commenced.[14] Here, while they do not allege a specific dollar amount, both Plaintiffs seek actual and punitive damages, injunctive relief, and attorneys' fees.[15] Under ADA Title III, Plaintiffs could have obtained

---

[12] *Id*.

[13] Doc. 1 at ¶¶ 4-5; Doc. 17-1 at ¶¶ 4-5. *See also Kaufman*, 224 F.2d at 125.

[14] *Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534 (5th Cir. 1990).

[15] *E.g.*, Doc. 1 at ¶¶ 29-32, (C) & (E) of Prayer; Doc. 17-1 at ¶¶ 27-30, (C) & (E) of Prayer; *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (jurisdiction is proper if it is "facially apparent" from the complaint that the claim or claims asserted exceed the jurisdictional amount).

injunctive relief and attorneys' fees had they prevailed on that issue while the state statute provides a minimum monetary damages award of $300 if they are successful on that claim.[16] Based on its experience in such matters and fee petitions filed and reviewed by it, it would be easy for the Court to determine that a litigated case, through summary judgment and appeals to the Fifth Circuit and the Supreme Court of Texas, would cause the incurrence of attorneys' fees in excess of $75,000. Thus, viewed at the commencement of this action, it is facially apparent that Plaintiffs' pleaded damages are in excess of $75,000, thereby satisfying the amount-in-controversy requirement of §1332(a).[17]

### B. Dismissal is Not an Option When the Court has Original Jurisdiction Under §1332.

Federal courts "have no more right to decline the exercise of [diversity] jurisdiction which is given, than to usurp that which is not given."[18] Difficult questions of state law "do not in themselves afford a sufficient ground for a federal court to decline to exercise its [diversity] jurisdiction to decide a case which is properly brought to it for decision."[19] Such abstention cannot be exercised merely because an "unsettled issue of state law is present," especially when a state statute permits certification of the issue to the highest state court.[20] Short of a recognized public

---

[16] *E.g.,* Tex. Hum. Res. Code §§121.003(a) and 121.004(a); *Diaz v. Doneraki Rests., Inc.*, No. H-12-2238, 2014 U.S. Dist. LEXIS 73045 at *3 (S.D. Tex. May 29, 2014) (awarding damages above the statutory minimum). *See also Lara v. Cinemark USA, Inc.*, No. 99-50204, 2000 U.S. App. LEXIS 12702 at *1-2 (5th Cir. May 17, 2000) (awarding statutory damages).

[17] *See id.*

[18] *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (Marshall, C. J.).

[19] *Meredith v. Winter Haven*, 320 U.S. 228, 234 (1943).

[20] *Hurst v. Regis Low, Ltd.*, 878 F. Supp. 981 (S.D. Tex. 1995) (citing *Lehman Brothers v. Schein*, 416 U.S. 386 (1974); *Meredith*, 320 U.S. at 234). *See also, Stool v. J.C. Penney Co.*, 404 F.2d 562, 563 (5th Cir. 1968).

8

policy or clearly-defined principle, which should be applied only in exceptional cases, it is "the duty of the federal courts, if their jurisdiction has been properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment."[21]

In contrast to supplemental jurisdiction under §1367, this Court's original jurisdiction under §1331 or §1332 is obligatory and may not be ceded to a state court or abandoned. Here, Plaintiffs' Complaints clearly establish that the Court has original jurisdiction over this matter under 28 U.S.C. §1332(a)(1). There are no applicable public policy issues or other exceptional circumstances impeding the exercise of such jurisdiction. While there are unsettled questions of state law to consider, the Court, the Fifth Circuit, the Texas Supreme Court, and the parties have labored extensively and expended significant resources to resolve those questions and create a legal framework to apply to the facts at hand. And, having accepted and answered the certified questions and provided its views of the legal standards under the THRC, the Texas Supreme Court understood that a federal court would likely be the tribunal to apply them. Thus, the Court is duty-bound to decide the remaining issues and render judgment over the parties' dispute rather than cede them to another court.

### C. This Case Has Been Fully Adjudicated Once by this Court, and Dismissing It at this Juncture Would Impose Significant Additional Expenses on the Parties and Additional Burdens on a State Court.

Even if the Court found that §1332 is not satisfied, there are compelling reasons under §1367 to retain jurisdiction over the remaining state law claims. After nearly four years of litigation, including extensive written discovery, depositions, dispositive motions, appellate proceedings before the Fifth Circuit, the Texas Supreme Court, and the significant expenditure of

---

[21] *Sayers v. Forsyth Bldg. Corp.*, 417 F.2d 65, 73 (5th Cir. 1969).

legal fees and associated costs and expenses, it would be unfitting to dismiss this action and force the parties to start over in state court.

Precedent in this Circuit establishes that, in determining whether courts should exercise pendent jurisdiction under 28 U.S.C. §1367(c) even after the federal claims that supported original jurisdiction have been dismissed, courts consider these factors: (1) whether the remaining claims involve any novel or complex issues of state law, (2) judicial economy, (3) convenience, and (4) fairness to the parties.[22] However, "the amount of judicial resources that the case has consumed is most important for [the court's] analysis as an indication of the familiarity of the forum with the case and its ability to resolve the dispute efficiently."[23] In concluding that the district court abused its discretion by declining to retain jurisdiction and dismissing the case, the Fifth Circuit in *Batiste* observed that the suit had been pending for almost three years, trial was imminent, the district court was intimately familiar with the merits of the parties' claims, and further proceedings in the district court would "prevent redundancy and conserve scarce judicial resources."[24]

The cases cited by the Fifth Circuit in its remand Order filed on August 9, 2019, support retention by this Court for a final disposition on the merits of the state law claims. *City of Chicago v. International College of Surgeons,* 522 U.S. 156 1997) was a state court action removed to the federal court. The plaintiff alleged violations of both the Illinois and U.S. Constitutions because of actions taken by a state administrative agency. The district court exercised supplemental jurisdiction over the state law claims and granted summary judgment to the City of Chicago. The Seventh Circuit reversed, holding that the district court lacked jurisdiction of a case containing

---

[22] *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227-28 (5th Cir. 1999).

[23] *Id.* (citing *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 589 (5th Cir. 1992).

[24] *Batiste, supra* at 228.

state law claims for "on-the-record" review. The Supreme Court granted certiorari and reversed, holding that such state claims were within the original jurisdiction of the district court and could be removed to federal court. The Supreme Court elaborated that, although supplemental jurisdiction is discretionary, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity," which in that case the district court properly decided would be best served by exercising jurisdiction over the state law claims. *Id.* at 173-74, quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).

In *Enochs v. Lampasas County,* 641 F.3d 155 (5th Cir. 2011), also a state court action removed to federal court, the Court of Appeals reversed the district court's denial of the plaintiff's motion to remand. The original petition included claims under 42 U.S.C. §1985 and the Texas Whistleblower Statute. The County of Lampasas promptly moved to dismiss these claims. Soon afterwards, the plaintiff filed an unopposed motion to amend the complaint to delete all federal claims. *Id.* at 157. Applying the factors of judicial economy, convenience, fairness, and comity set out in *Cohill, supra* at 350, 353, the Fifth Circuit found an abuse of discretion by the district court in its decision to deny the motion to remand.

These cases are distinguishable from this case. The overarching principle to be derived from *Cohill, City of Chicago,* and *Enochs,* is that in a *removed action,* if the federal claims are disposed of early on or, as in *Enochs,* the complaint is appropriately amended early by consent of the parties to remove the federal claims, the case should be sent back to the state court from whence it came. At such an early stage, the common law factors articulated by the Supreme Court in *Cohill* militate in favor of remand.

11

Here, however, the case was never filed in a state court – it was filed by Plaintiffs in this Court, and they chose the forum. Further, the case has been fully litigated through discovery, summary judgment, and appeal to the Fifth Circuit and on two certified questions to the Texas Supreme Court. These factors weigh heavily in favor of this Court's retention of the case even though the federal claims have been finally adjudicated. There is another factor to consider, and the result, although not preordained, is presaged in the Fifth Circuit's Order. The Fifth Circuit could have vacated the judgment and sent the case back to this Court with instructions to dismiss instead of certifying two questions to the Texas Supreme Court. In asking the state's highest civil court to lay out the law under the THRC, both the Fifth Circuit and the Texas Supreme Court contemplated that a federal court would resolve the issue. Had the Texas Supreme Court agreed with this Court and the Court of Appeals that a plasma collection center is not a "public facility," a final decision on the state law claims would have been rendered. Now that the Texas Supreme Court has held that a plasma collection center is a "public facility," what remains is the application of the newly-articulated legal framework set out in that Court's decision.

The principles of judicial economy, convenience, fairness, and comity amply support retention of this case. Resolution of the remaining claims is amenable to further briefing, and possible oral argument, on a motion for summary judgment. This Court is already familiar with the factual background and the basic legal framework that must be applied to determine the proper result. Likewise, if another appeal is necessary, the Fifth Circuit is well-positioned to take up the case.[25]

---

[25] Analogous U.S. Supreme Court precedent also counsels in favor of retaining jurisdiction. In *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836 (1989), a case in which the district court exercised diversity jurisdiction under §1332(a), the court was faced with the prospect of requiring dismissal because the presence of a non-diverse party went undetected until years later. In affirming the continued exercise of jurisdiction, the Supreme Court observed that if the case

### III.   Conclusion

This Court should retain the case and decide the THRC issue applying the law as delinieated by the Texas Supreme Court in response to the certified questions posed to it by the Fifth Circuit, because it has original jurisdiction under 28 U.S.C. §1332(a) based on a facial examination of the pleadings. However, even if the THRC claim is supported only by §1367 supplemental jurisdiction, the Court nevertheless should exercise its discretion to retain the case, which has been fully litigated. To dismiss it and compel the parties to pursue the matter in a state court would not promote the interests of judicial economy, convenience, or fairness.

Dated:  March 31, 2020                      Respectfully submitted,

/s/ *Bruce J. Douglas*
Bruce J. Douglas
Texas State Bar No. 06039770
Ogletree, Deakins, Nash, Smoak & Stewart, P. C.
Capella Tower
225 South Sixth Street, Suite 1800
Minneapolis, MN 55402
612.336.6858
bruce.douglas@ogletree.com

-AND-

Collin K. Brodrick
Texas State Bar No. 24087212
Ogletree, Deakins, Nash, Smoak & Stewart, P. C.
Preston Commons West
8117 Preston Road, Suite 500
Dallas, TX 75225
214.692.0168
collin.brodrick@ogletree.com

ATTORNEYS FOR DEFENDANT
CSL PLASMA INC.

---

were dismissed, the plaintiff would have to refile and litigate again in the trial court thereby "compel[ing] [him] to jump through [] judicial hoops merely for the sake of hypertechnical jurisdictional purity." The Court declined to "impose [such] unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention" *Id*.

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 31, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

  Brian D. East
  Lia S. Davis
  Disability Rights Texas
  2222 W. Braker Ln.
  Austin, TX 78758
  Email: beast@drtx.org
     ldavis@drt.org

            /s/ *Bruce J. Douglas*
            Bruce J. Douglas

41210679.6